INSURANCE COMPANY OF NORTH AMERICA v. THOMAS BELL.

Decided January 9, 1901.

1.—Insurance—Open Policy—Notice—Agency—Course of Dealing.
The effect of a stipulation in an open policy of insurance on cotton to be purchased and shipped during the season, that risks covered were to be advised to the insurer at its home office, by letter or telegram, as soon as known to the insured, was controlled by the course of dealing between the parties whereby insurer and insured acquiesced in the notice being given by the insurer's local agent, who issued certificates showing the additional property covered from time to time.

2.—Charge—Omission—Request—Agency.
A charge submitting the question whether a certain person was agent for defendant, but without defining what would constitute him such an agent, was not erroneous on account of such omission where no instruction on the subject was requested by the complaining party.

3.—Insurance—Agency.
An insurance broker whose usual course of business, in receiving premiums and issuing certificates showing the property insured from time to time under an open policy and notifying the company of the same, had been acquiesced in by the insurer, was agent of the company in so doing, and not of the insured.

Appeal from Brown. Tried below before Hon. J. O. Woodward.

*Chas. Rogan* and *I. J. Rice,* for appellant.

*Henry Drane* and *T. C. Wilkinson,* for appellee.

Vol. 25 Civil—9.

COLLARD, ASSOCIATE JUSTICE.—Suit by appellee, a firm doing business under the name of Thos. Bell, composed of Thos. Bell and H. P. Williams, filed 21st February, 1899, amended original petition filed May 7, 1900, against appellant, Insurance Company of North America, charged to have an office in the city of Brownwood, Texas, conducted by the agent, E. B. Henly & Co., a firm composed of E. B. Henly. The petition alleges that plaintiff was doing business buying, selling, and exporting cotton to foreign markets; that on the 24th October, 1898, plaintiff applied to defendant's local agent at Brownwood, Texas, for additional insurance in the sum of $1350 on 900 bales of cotton shipped from Brownwood, Texas, via, the Gulf, Colorado & Santa Fe Railway, to Galveston, and thence, via the steamship Brinkburn, to Havre, France, and offered to pay the premium therefor; that defendant, by its agent E. B. Henly & Co., accepted said risk and informed plaintiff that the policy of insurance would be issued on the same day, but that the policies or certificates of insurance were not issued and delivered to plaintiff by defendant or its agent till the 15th day of December, 1898, about which date defendant's agent demanded and collected of plaintiff the premium thereon, $18.75; that plaintiff relied upon defendant's agent that the risk was carried and that the policies would be issued immediately, and so believing, took out no other insurance on the cotton; that the cotton was loaded on the steamship Brinkburn, destined for Havre, France, but that the ship was wrecked in a storm off the south Atlantic coast, while in voyage, about December 15, 1898, and the cotton lost, none of it ever having been recovered. It is alleged that the cotton was worth the full amount of the policy; that the defendant immediately denied liability for the loss, and hence no proof of loss was furnished defendant.

By supplemental petition, after general demurrer to defendant's answer and general denial of the same, plaintiff, replying to defendant's answer, in which it is alleged that plaintiff failed to notify the defendant by letter or telegram of the risk or contract, says, that if the plaintiff was required by the terms of the risk or contract to give such notice to defendant, which is denied, defendant, at the time of taking the risk, had, by its previous course of dealing with plaintiffs, induced them to believe and plaintiffs did believe that such notice was not required, and defendant had in fact waived such notice from them, in this, that about the 1st of September, 1898, plaintiff had been making such contracts of insurance with defendant through E. B. Henly & Co., its local agent at Brownwood, Texas, who issued all certificates of insurance on such risks, and from that time till the 24th October, 1898, and almost daily during that time, defendant, through its said agent, had issued to plaintiff many such certificates of insurance on several thousand bales of cotton, and plaintiff had paid the regular premium therefor, which had been received by defendant, during all of which time plaintiffs never at any time notified defendant by letter or telegram of such risk, but that defendant was notified by its agent, and defendant at all times accepted the risk and the premiums paid and paid for all

losses sustained by the risks, without any complaint whatever that it had not been advised thereof by plaintiffs. That such notice would have been given by plaintiffs if it had been insisted on by defendant; but plaintiffs were led to believe and did believe, from defendant's conduct and course of business and from the fact that defendant's agent gave the notice, that no such notice was expected or required of plaintiffs; that about the 15th of December, 1898, plaintiffs paid defendant, through its agent, the sum of $18.25 as premium of the risk or contract of insurance sued on in full payment of the risk, and defendant accepted the same and has retained it.

Wherefore plaintiff alleges that defendant has waived the stipulation requiring notice from plaintiffs of the risks and is estopped to rely on the same or failure to comply with the same.

Defendant demurred generally to the pleadings of plaintiffs, and specially, because it is not alleged that defendant accepted the alleged risk or at any time entered into any contract of insurance with plaintiffs on the 900 bales of cotton; because the petition shows that if any contract of insurance was entered into the same was oral and void and the petition fails to set out the terms of such contract. Because the petition shows that if any contract of insurance was entered into it was not until the loss had occurred.

Defendant answered by general denial, and specially that plaintiffs failed to notify defendant of the risk by letter or telegram as soon as known to the assured, as the policy of date August 31, 1898, stipulated and provided, and that for that reason the risk was never accepted and no such risk was ever taken by defendant; and again alleged that at the time the contract sued on was issued the cotton covered thereby was already lost and the loss was known to plaintiffs, because of which the policy was void and was repudiated by defendant as soon as advised of the same.

Defendant denies that E. B. Henly & Co. or E. B. Henly was ever at any time its agent in matters of insurance except to collect and remit to it premiums on insurance of the cotton of plaintiffs for the season of 1898-1899, but that in all things relating to the insurance of cotton he was the agent of plaintiffs.

Defendant specially denies that it ever waived notice of any risk being given to it at the home office as stipulated in the policy. It also denies that it received the premium for the risk sued on; but repudiated such collection as soon as notified, and if the same was collected by E. B. Henly & Co., it was without its knowledge and consent, and if it received the same it offers to credit the same on the cross-bill filed.

The foregoing answer is sworn to by Rice, attorney for defendant.

Defendant also filed a cross-bill for $562.07, for unpaid insurance on cotton issued by defendant to plaintiffs at divers times from November, 1898, to January, 1899, under an open policy, an itemized account of which is filed with the answer, which, it is alleged, plaintiffs have refused to pay.

We find the facts as follows:

The cotton was shipped, as alleged, from Galveston, Texas, to Havre, France, on the ship Brinkburn, which, with all the cotton, was lost in a storm at sea. The cotton was insured by defendant as alleged, and plaintiff applied to E. Henly & Co., E. Henly being the company, residing at Brownwood, Texas, for an additional 5 per cent insurance on the cotton, which was legitimate and was allowed by Henly. Henly did not issue the certificates covering the additional 5 per cent on the cotton until the 15th day of December, 1898, the day of the loss of the vessel and the cotton, but the loss was not known until several days after. There was an open policy issued by defendant insurance company to Bell at the beginning of the season, which became operative as insurance from the time special lots of cotton were afterwards insured, evidenced by certificates covering the same, but it was in proof that defendant would insure cotton for plaintiff before certificates were issued, and it is in proof that the insurance in question was taken and agreed on by plaintiff and Henly before the 15th day of December, 1898, and before the wreck of the vessel.

It is in proof that Henly acted for defendant insurance company, granting insurance in its name, which contracts of insurance were respected by the company and acted on, and thus insured numbers of shipments of cotton for plaintiff in the name of the company.

There is a stipulation in the open policy as follows: "Risks covered under this policy to be advised, as soon as known to the assured, to the Insurance Company of North America, 232 Walnut street, Philadelphia, by telegram or letter." Plaintiffs did not notify the company of this insurance according to the stipulation, but it was shown that in numerous other shipments issued by defendant this provision was not complied with, and it was in proof that this was the course of business with plaintiffs. It was in proof, and we so find the facts. The plaintiffs had already taken out policies on this lot of cotton, covering its value and 5 per cent additional, and being advised by the consignee of the cotton at Havre, France, that the policy should cover not only the value of the cotton and 5 per cent additional, but 10 per cent additional to cover the cost of transportation, they procured the additional 5 per cent as stated. They applied to Henly for the additional 5 per cent and he granted it; as in other cases issued no certificates at the time, but stated that it would be considered as insured for the additional 5 per cent from the time of the application. He postponed the issuance of the certificates until the 15th day of December, 1898, when he did issue the certificates,—forwarding one to the company, delivering one to the plaintiffs, and the other was attached to the invoice and bill of lading to be sent with the draft to collect for the cotton, but, as before stated, on the same day the vessel and its contents, with the cotton, was wrecked in a storm at sea and nothing recovered, which fact was not known by the parties to the suit until several days after. The course of business as conducted by the parties was: Defendant would cover

or insure cotton for plaintiffs before any certificates were issued; this was done by plaintiffs notifying Henly that they desired a certain number of bales insured provisionally and he would tell them all right, and he would then notify the company at the home office. In some instances the cotton would not be bought, but when he would get an order for it he would have it covered provisionally and when it was bought, invoiced, and ready for shipment, Henly would issue the certificates. "No particular time was mentioned in the marine insurance, but it was just covered from the time it was bought at different points in the interior to the end of the voyage."

In November, 1898, plaintiffs applied for the additional 5 per cent insurance on the cotton on the ship Brinkburn; the agent replied: "All right; give me the marks and numbers of bales on the certificates already issued on it and I will write it up." He said he would do so whenever he got time, and "We'll just consider it covered." He was asked by plaintiffs if he had not better notify the company, and the agent replied no, it was not necessary, and he did not notify the company until he sent it the certificates, December 15, 1898. Henly collected the premium on the additional insurance and sent it to the company, and it received the same, which it has retained. The evidence does not show whether or not the ship was in fact wrecked before the certificates were issued, but it occurred on the same day. The evidence shows that Henly was the agent of the company in soliciting the insurance and in issuing the certificates.

The account of defendant against plaintiffs was correct and due, and was credited by the jury and the judgment of the court without objection on the part of the plaintiffs, the verdict and judgment for plaintiffs being for the balance due on the additional insurance as shown by the certificates of insurance.

*Opinion.*—1. The court submitted the case to the jury on special issues and questions,—the jury answering: (1) that the cotton in controversy was insured by E. B. Henly as the agent of the defendant; (2) that the cotton was insured prior to its loss; (3) that the defendant had accepted the premiums on the additional insurance; (4) that the defendant company was advised of the additional insurance as soon as known to the assured; (5) that defendant by its conduct or silence led Bell to believe that notice from him of the risk was not required; (6) and that E. B. Henly informed plaintiffs that it was not necessary to give notice of the verbal contract of insurance. There was testimony supporting the findings of the jury on all the issues submitted from 1 to 6 inclusive, and it can not be said that the verdict was not supported by the evidence. On the contrary there was evidence to support it, and it was not error to refuse a new trial upon the alleged ground that the verdict was contrary to and against the evidence.

2. We find no error in the refusal of the court to instruct the jury to find for defendant. The clause in the open policy requiring plain-

tiffs to advise the company of the additional insurance was ignored by the parties in their previous dealings. It was not enforced, and the course of business previously pursued by the parties waived the performance of the stipulation on the part of the assured. It will be remarked that no penalty is provided for in the contract in case of failure to. comply with the stipulation, nor does its importance appear so as to make it a condition to performance by the company.

3. The court did not instruct the jury as to what would constitute Henly the agent of the company, but merely required them to find on the issue of agency. Defendant asked no charge upon the subject, and we can not say there was error in the omission. The attempt of appellant to make Henly the agent of Bell can not avail. There was no such written stipulation in the policy or elsewhere, but if it had been so stipulated the facts would remain and he would be the agent of the company and it would be bound for his acts done in the scope of his authority. He acted for the company, issued certificates for it, sent in the premiums which were accepted by it without objection, and was recognized by it as its agent to do what he did do. This was the usual course of the business, and it may be said he was held out by the company as its agent to do what he did do. His acts, then, in the scope of such apparent authority, would bind the company. Am. and Eng. Enc. of Law, pp. 334, 335, and authorities cited; Id., 320, 321, 322, and notes. Even where it is provided that an agent can not change terms and conditions and they shall not be changed or waived except by the president in writing, the agent may waive if he is otherwise competent. Id., 338, 339. Especially when the company recognizes such acts on the part of the agent and accepts the same with its compensation and results.

We have considered every assignment of error and have concluded that none of them can be sustained. The judgment of the lower court is therefore affirmed.

*Affirmed.*